**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1101 & 20-3392
_____

KAREN TUCKER,
                    Appellant

v.

(HP) HEWLETT PACKARD, INC.;
HEWLETT PACKARD COMPANY (HP)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1:14-cv-04699)
District Judge:  Honorable Robert B. Kugler
_____

Submitted pursuant to Third Circuit LAR 34.1(a)
August 20, 2021

Before:  AMBRO, PORTER and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 7, 2021)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Before the Court are consolidated appeals from pro se appellant Karen Tucker, who brought products-liability claims against appellee HP Inc.,[1] based on allegations that she was burned and electrically shocked by her HP laptop as a result of a defective power cord. After summary judgment was granted in favor of Appellee, Appellant filed three motions for reconsideration, all of which were denied. For the reasons that follow, we will affirm.

I.

Appellant initiated this pro se action in July 2014. Protracted litigation followed, including the District Court's October 2016 dismissal of the case, which this Court vacated and remanded. See Tucker v. (HP) Hewlett Packard, Inc., 689 F. App'x 133 (3d Cir. 2017) (per curiam). In October 2018, following the close of discovery, Appellee filed a motion seeking both summary judgment and to exclude Appellant's proffered expert from testifying regarding his opinions. Following an April 30, 2019 hearing, the District Court granted both requests from the bench. Judgment was entered on May 1, 2019.

On August 15, 2019, Appellant filed a motion for reconsideration, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (hereinafter "First Motion for

---

[1] Appellee asserts that it was incorrectly designated as Hewlett Packard, Inc. in Appellant's filings.

2

Reconsideration").[2] On December 31, 2019, the District Court denied it as meritless and noted in a footnote that it was untimely. On January 13, 2020, Appellant filed a notice of appeal. In February 2020, she filed a motion under Federal Rule of Civil Procedure 60(b) to correct, dismiss and vacate the District Court's December 31, 2019 order denying the First Motion for Reconsideration, arguing that the Court erred in holding that it was untimely (hereinafter "Second Motion for Reconsideration"). On June 29, 2020, the District Court denied the Second Motion for Reconsideration, noting that it failed to address the Court's denial of the First Motion for Reconsideration as meritless. On July 14, 2019, Appellant filed another motion for reconsideration, citing both Rule 59(e) and Rule 60(b), and seeking reconsideration of the District Court's orders denying her prior two motions for reconsideration (hereinafter "Third Motion for Reconsideration"). On November 9, 2020, the District Court denied the Third Motion for Reconsideration, and, on November 20, 2020, Appellant filed another notice of appeal. In this Court, the two appeals were consolidated, and the parties have filed briefs.

---

[2] After entering judgment, the District Court granted Appellant's requests for a transcript fee waiver and an extension of time to file a motion for reconsideration, directing her to provide the Court with an email address to which the transcript could be sent when it was ready and permitting her to file a motion for reconsideration within 14 days of receiving the transcript. The transcript was docketed on May 30, 2019; however, it was not emailed to Appellant until July 30, 2019. Appellant asserts that a District Court law clerk told her on the phone that the District Court had given her an August 15, 2019 deadline to file a motion for reconsideration.

II.

We first consider our jurisdiction. In addition to challenging the orders denying her three motions for reconsideration, Appellant appears to seek appellate review of the May 1, 2019 Judgment excluding her expert from testifying and granting summary judgment in favor of Appellee. Appellant had 30 days to appeal the May 1, 2019 judgment, see Fed. R. App. P. 4(a)(1)(A), but the January 13, 2020 notice of appeal was filed well after the 30-day deadline. If the First Motion for Reconsideration had been timely filed, i.e., within 28 days of the May 1, 2019 judgment, see Fed. R. Civ. P. 59(e), she would have had 30 days from the entry of the order denying the First Motion for Reconsideration to challenge the May 1, 2019 judgment on appeal, see Fed. R. App. P. 4(a)(4)(A)(iv). However, the First Motion for Reconsideration was filed on August 15, 2019, well after 28 days had passed. Although the District Court granted her request for an extension of time to file the motion, the Court did not have authority to do so, and her time to appeal the May 1, 2019 judgment therefore was not extended. See Fed. R. Civ. P. 6(b)(2) (providing that the time limit of Rule 59(e) may not be judicially extended); Long v. Atl. City Police Dep't, 670 F.3d 436, 444 n.16 (3d Cir. 2012); Lizardo v. United States, 619 F.3d 273, 279-80 (3d Cir. 2010). Accordingly, we lack jurisdiction over the May 1, 2019 judgment because Appellant's notice of appeal was untimely as to that decision.

We do have jurisdiction, however, over the orders denying Appellant's motions for reconsideration. See Long, 670 F.3d at 446 n.19 (stating that this Court has

4

"jurisdiction to review a timely appealed order disposing of an untimely motion for reconsideration"). "[A] proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Rule 60(b) provides for relief from a judgment or order based on: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) a void judgment; (5) the satisfaction, release or discharge of a judgment or inequity in the prospective application of the judgment; or (6) any other reason justifying relief from operation of the judgment. We review the denial of a motion reconsideration for an abuse of discretion. See Budget Blinds, Inc. v. White, 536 F.3d 244, 251 (3d Cir. 2008) (Rule 60(b) motions); Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999) (Rule 59(e) motions); see also Long, 670 F.3d at 446 (stating that "our review of the order denying reconsideration is subject to a more deferential and circumscribed standard of review than would apply if we also were to have jurisdiction to consider the underlying dismissal order"). "To demonstrate an abuse of discretion, [an appellant] must show that the District Court's decision was arbitrary, fanciful or clearly unreasonable." Hart v. Elec. Arts, Inc., 717 F.3d 141, 148 (3d Cir. 2013) (quoting Moyer v. United Dominion Indus., Inc., 473 F.3d 532, 542 (3d Cir. 2007)).

5

III.

Appellee argued in its motion for summary judgment that Appellant's expert should be precluded from testifying as an expert because he had failed to provide a factual foundation for his conclusions, and that Appellee was entitled to summary judgment because without a liability expert Appellant could not prove the elements of her products-liability claims.

The following was established during discovery. In August 2014, Appellee carried out a voluntary recall and replacement program for AC power cords provided with Appellee's notebook computers sold between September 2010 and June 2012 because they could pose a risk of fire or burn hazards. Appellant purchased her laptop during that period, and her alleged injuries occurred in May 2013 and March 2014. Appellant engaged an expert, who attended a session inspecting and testing the laptop with Appellee's expert. Appellant's expert did not otherwise inspect or test the laptop. Appellant's expert prepared a report, which referenced the "defective" cord, and recall thereof, and appeared at least once to link the cord to Appellant's injuries. However, the report noted that the two experts "physically inspected the power cord and power supply for external physical damage and found none," that an x-ray examination did not reveal "any physical damage or possible inoperable defects," and that "there [was] no evidence to suggest any difference in functionality" between the original and replacement cords. (Appellee's App'x at 145, 148). Ultimately, Appellant's expert's conclusions were unrelated to the power cord, instead opining that Appellee should have implemented a

6

software update to slow down the laptop to reduce the heat and installed a better fan and a larger vent to disperse and release the heat.

At his deposition, Appellant's expert stated that there was not a design defect in the power cord; that, to his knowledge, there was not a manufacturing defect in the power cord at the time of Appellant's injuries; that, to his knowledge, there was not a failure to warn Appellant with respect to the power cord; and that, "[t]he power cord had nothing to do with her alleged injuries, to the best of [his] knowledge." (Id. at 230-31). With regard to the conclusions in his report, he acknowledged that he never personally inspected or tested Appellant's laptop and that he could not cite any national standards or peer-reviewed literature supporting his conclusions.

At the April 30, 2019 hearing on the motion, Appellant's expert claimed that he had misspoken at his deposition with regard to the power cord and that it in fact was defective and had caused Appellant's injuries. The District Court was unpersuaded by Appellant's expert's explanation, noting that he had stated at least three times during his deposition that he was not opining that the cord was defective. The Court concluded also that the expert had failed to cite any industry standards or studies to support his other opinions and that he therefore would be excluded from testifying. The District Court then stated that summary judgment would be granted in favor of Appellee because Appellant would not be able to provide testimony from a liability expert.

In the First Motion for Reconsideration, Appellant challenged the District Court's decision to exclude her expert and argued that, even if exclusion was appropriate, the

7

District Court's grant of summary judgment was a clear error of law because the evidence, particularly the evidence of the power-cord recall, was sufficient for her products-liability claim to be submitted to a jury. Having carefully reviewed Appellant's expert's report, his deposition testimony, and the April 30, 2019 hearing transcript, we conclude that the District Court did not abuse its discretion in excluding the expert. The District Court's determinations that his proffered opinions regarding the role of the power cord drastically changed without an adequate explanation, and that he failed to support his conclusions with any industry standards or studies, were not arbitrary, fanciful or clearly unreasonable. See Hart, 717 F.3d at 148; see also Fed. R. Evid. 702(c) (requiring an expert's testimony be "the product of reliable principles and methods"); Calhoun v. Yamaha Motor Corp. U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (providing that "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief") (citations omitted).

The District Court also did not abuse its discretion with regard to Appellant's argument that the Court clearly erred by holding that her products-liability claim could not survive the exclusion of her expert testimony. A liability expert was necessary because there was no evidence in the record that any alleged defect or failure to warn caused Appellant's injuries. See Zaza v. Marquess and Nell, Inc., 675 A.2d 620, 627 (N.J. 1996) (stating that a design-defect claim requires showing "that the product was defective, that the defect existed when the product left the defendant's control, and that

the defect caused injury to a reasonably foreseeable user") (citations omitted); Coffman v. Keene Corp., 628 A.2d 710, 716 (N.J. 1993) ("When the alleged defect is the failure to provide warnings, a plaintiff is required to prove that the absence of a warning was a proximate cause of his harm.") (citation omitted); see also Manieri v. Volkswagenwerk A. G., 376 A.2d 1317, 1322-24 (N.J. Super. Ct. App. Div. 1977) (holding that recalls may be probative of whether the defect arose while the manufacturer possessed the product, but that the plaintiff must independently establish that the defect existed at the time of the accident) (citations omitted). Finally, the District Court did not abuse its discretion in denying the Second and Third Motions for Reconsideration, which challenged the denial of the First Motion for Reconsideration on timeliness grounds only, and largely raised arguments previously rejected.

Accordingly, we will affirm the District Court's denial of Appellant's motions for reconsideration. Appellant's motion to file a supplemental appendix is granted.